CRAIG'S ADM'R.
*vs.*
LEE.

---

## Craig's Adm'r. *vs.* Lee.

### ERROR TO LINCOLN CIRCUIT COURT.

Case 26.

1. Though the owners of slaves have authority to inflict chastisement in order to enforce obedience to their lawful commands, yet the constitution and laws of Kentucky furnish some protection to the slave, and does not allow that he be killed or maimed, or subjected to cruel and inhuman punishment, even to enforce obedience to lawful commands, which may result in the death of the slave; and no such authority can be vested in a hirer or bailee of a slave.
2. The hirer of a slave, or his overseer, who, by cruel and inhuman treatment or neglect, causes the death of the slave, is responsible to the owner for its value.
3. If a slave is so injured as to occasion loss of life, limb, or health by the treatment of the hirer, it is incumbent on such hirer to show a justifiable cause for the treatment; the law does not presume that a punishment resulting in such consequences was justified or authorized. Chastisement, when proper, may be inflicted by the hirer of a slave, in moderation, when the slave is in a condition to be punished.
4. It is not permissible for the hirer of a slave to inflict cruel and dangerous chastisement to coerce obedience in a slave hired.
5. The hirer of a slave injured by cruel chastisement by an overseer, under whose management the slave is placed, is responsible to the owner.

Chief Justice HISE delivered the opinion of the court.

This suit was brought by John Craig, as administrator of Letitia Craig, deceased, to recover from the

Case stated.

defendant, N. T. Lee, the value of a slave that had belonged to plaintiffs intestate, upon the charge that defendant's overseer and agent, under whose control and management the defendant's farm and slaves, including the slave in question, had been placed, had so cruelly chastised, beat, and whipped the said slave, thus under his control, whilst she was in a state of pregnancy, that an abortion was thereby caused, and that in consequence thereof the said slave became sick and diseased and finally died; and that her death was caused by the sickness and disease which was superinduced by the immoderate and inhuman chastisement inflicted upon her when she was pregnant; and because she had been neglected, and was suffered to languish in her sickness, without sufficient nursing and attention. The defendant plead not guilty, and there was a trial resulting in a verdict and judgment in favor of the defendant. A new trial was moved by the plaintiff: 1st. Because the verdict of the jury was in opposition to the evidence, and contrary to law. 2d. Because the court, at the instance of the defendant, erroneously instructed the jury upon the law of the case.

The motion for a new trial was overruled. The plaintiff excepted to the opinion of the court. The proof in the cause is presented in the record by a bill of exceptions; and a writ of error has been sued out by Craig's administrator in this court, who demands that the judgment of the circuit court be reversed because that court erred in refusing a new trial as moved upon the grounds as stated.

It is not deemed necessary to decide the question as to whether the circuit judge did or did not err in refusing the new trial for the first cause suggested; that the verdict was contrary to the evidence before them, and to the law of the case, inasmuch as the judgment must be reversed upon the second ground assumed. The jury, therefore, upon a second trial of the cause, should be left free to determine the facts of the case, wholly uninfluenced by the opinion of this court as to

effect and weight of the evidence, as manifested in this record.

. In the progress of the trial the jury was instructed by the court at the instance of defendant, as follows: 1. "That if they believed, from the evidence, that Stephens was the overseer of Lee, entrusted with the management of his farm and servants, and he chastised the slave in contest, that the law presumes he had good cause to do so until the contrary is shown". 2. "That Stephens, as the agent and overseer of Lee, (if the jury believe he had just cause to chastise said servant,) had a right to use as much force in the chastisement as would make the servant submissive and obedient in the discharge of her duty, and performance of his orders."

These two instructions, taken together, were misleading and erroneous, and they collectively do not present the law of this case correctly, and seem to be inapplicable to the facts as charged in the declaration, and as shown by the proof in the cause. The chastisement inflicted in this case was not inflicted by the owner of the slave, or by his agent or overseer by his direction, and the legal question involved is not as to the extent and degree of power and authority which the owner has and may exercise over his own slave. It is true the owner possesses and may use the authority over his slave that may be proper and necessary to secure the obedience, submission, and service of his slave, and to enforce the same by the administration of such chastisement and correction as may be reasonably required for that purpose.

This authority of the owner grows out of the character and nature of the relation subsisting between master and slave; and where the institution of slavery exists, and one man may be legally the owner of another, as of his lawful property, and be entitled to his person and labour, the authority of government and of chastisement must necessarily belong to the master and owner as an incident to the relation legally existing; yet the constitution and laws of this

1. Though the owners of slaves have authority to inflict chastisement in order to enforce obedience to their lawful commands, yet the constitution and laws of Kentucky furnish some pro-

CRAIG'S ADM'R.
*vs.*
LEE.

tection to the slave, and does not allow that he be killed or maimed, or subjected to cruel and inhuman punishment, even to enforce obedience to lawful commands, which may result in the death of the slave; and no such authority can be vested in a hirer or bailee of a slave.

2. The hirer of a slave, or his overseer, who, by cruel and inhuman treatment or neglect, causes the death of the slave, is responsible to the owner for its value.

3. If a slave is so injured as to occasion loss of life, limb, or health by the treatment of the hirer, it is incumbent on such hirer to show a justifiable cause for

state, as well as of all the states in which the institution of slavery legally exists, so far as known, furnish some protection to the slave, and regard him as a human being, and as such, the owner, though entitled to his person and service during life, cannot kill or maim his slave; he has no right to inflict upon him such cruel and inhuman punishment, even with the purpose of securing service and obedience, as that it must result in the death of the slave as a consequence of the punishment inflicted. If then the actual owner and master is thus limited and restricted in his authority to punish his own slave, of course a mere bailee, having possession of the slave on hire, his agent or overseer may not possess and exercise over the hired slave power and authority which does not belong to the owner himself, and inflict punishment in a degree and to an extent which would be unlawful if inflicted by the master.

If the owner exceeds his authority he is not civilly responsible to any other person, or to the slave himself in a civil action, for the injury done. His responsibility would be criminal, if he intentionally murders or maims his slave by a single blow, or by slow degrees, and by protracted punishment; but the bailee of the slave of another, holding him on hire, besides the criminal responsibility incurred, is responsible to the owner, if he or his overseer, in the course of his service as such, shall, by cruel neglect, or by inhuman treatment, cause the death of the slave, or impair his health, or otherwise injure him whilst in their service and possession. If the master injures his own slave the loss is his own.

If the slave is injured or destroyed by one to whom he is hired for a term, or by one acting as his agent or overseer whilst engaged in his business, either by neglect or inattention in sickness, or by inhuman treatment in the form of immoderate chastisement, or cruel treatment in failing to furnish necessary food, raiment, and shelter, he occasions loss to another, for which he is civilly responsible; and if, from such treatment, the

owner's slave is permanently injured in his health, deprived of a member, or of life, the bailee is responsible for damages commensurate with the injury done to the slave, unless he can himself show that sufficient legal cause existed for the infliction of the injury. If the extent of the injury done is the loss of a limb, or of the health, or the life of the slave, in such case it is not a legal presumption that sufficient cause existed for its infliction, but on the contrary the burthen of proof is upon the defendant, to show that a sufficient cause of justification existed. If the chastisement given in the case in question had been moderate, and had resulted in no permanent injury to the plaintiffs reversion in the slave, then, inasmuch as the defendant or his overseer had a lawful right to inflict moderate chastisement on a hired slave, in such case it might be presumed that good cause existed for its infliction. But if the chastisement inflicted was inhuman and immoderate, and resulted in a permanent injury to the slave, and loss to the owner, or in the loss of the health or the life of the slave, then the bailee is responsible unless he show and make out, by satisfactory proof, a complete justification.

the treatment; the law does not presume that a punishment resulting in such a consequence was justified or authorized. Chastisement, when proper, may be inflicted by the hirer of a slave, in moderation, when the slave is in a condition to be punished.

In this case it is charged that the whipping and beating was cruel, inhuman, and unlawful; that it caused an abortion, and the premature birth of an infant that was destroyed in its mothers womb, and the consequent death of the mother.

These facts, therefore, as charged in the declaration, if true and made out by proof, are such that the law would not presume a justification in favor of defendant, but the burthen of proof in the case, as assumed by the declaration if established, would legally rest on defendant to make out his own justification. The said instructions, therefore, as quoted, should not have been given unless with the qualification as follows, to-wit: "That if the defendant's overseer chastised the slave with moderation, and when it could be done with safety, and at a time when it was not improper and imprudent to inflict it, in such case the chastise-

CRAIG'S ADM'R.
vs.
LEE.

ment was lawful, and it might be legally presumed that there was sufficient cause for such chastisement." But the instructions as they stand would imply, that although the chastisement and beating inflicted was cruel and immoderate, and although inflicted at an improper time, yet as Stevens was the overseer of Lee, who held the slave on hire, the law therefore justifies the chastisement inflicted, however and whenever inflicted, and whatever its consequences, unless the plaintiff should prove negatively that no sufficient cause did exist for the punishment, as given.

4. It is not permissible for the hirer of a slave to inflict cruel and dangerous chastisement to coerce obedience in a slave hired.

After having, by the first instruction above quoted, secured the point, that in the absence of negative proof of the non-existence of any cause, to be furnished by plaintiff, that sufficient cause for the chastisement, as given, must be taken for granted by the jury, the defendant procures from the court, and reads to the jury in connexion therewith, the third instruction, which is in aggravation of the slighter error committed in giving the first. For after having already told the jury, in the first instruction, that they must presume that sufficient cause for the chastisement existed, if not disproved; then, presuming this as matter of law, they are told, if they believe, that sufficient cause existed to punish the slave, that then the overseer was not limited or restricted by law as to the degree of punishment or beating which he might inflict, short of the coercion of the absolute obedience and submission of the slave, although it might require the infliction of the most cruel tortures, and even the deprivation of the members of the body, to procure that submission, and although the slave might have the firmness to suffer death rather than to yield, yet, if necessary, for the purpose, by these instructions collectively, the bailee's overseer may beat another man's slave, for the time being in his possession, on hire, to death, if the slave will not otherwise submit to him and obey his orders. Such is not the law, and the principle embodied in the third instruction cannot receive the sanction of this court.

To make the first, third, and fourth instructions of defendant agree together, the court must be understood as saying in substance to the jury, that if the condition of the slave was such as that a humane and prudent man might have whipped her, then, in such case, the overseer is to be presumed to have sufficient cause to inflict the most cruel chastisement, and to an extent sufficient, whatever be the consequences, to produce submission. Even had the slave not been pregnant, and had she been in robust health, and in such condition as that she might have been safely chastised for misconduct by a humane and prudent master, yet it would not follow, if a bailee's overseer should punish such slave with such cruelty, and inflict such severe chastisement as to result in the loss of the limbs, health, or life of such slave, that good cause for such chastisement should be presumed in his favor, or that it should be justified by assuming or showing that the slave could not otherwise be reduced to submission and obedience.  For the reasons given it is the opinion of this court that the second instruction asked by the defendant was properly refused, and that the first and third instructions given at said defendants instance ought to have been refused.

The only authority cited to sustain the principle embodied in the second instruction is the opinion of the supreme court of appeals of Virginia, delivered in the case of *Harris v. Nicholas*, reported in 5*th Munford*, *page* 483. The second instruction reads as follows: "That if he, (the overseer,) exceeded his authority from Lee in chastising the servant, so as to produce an injury to the negro that he might have avoided, without the knowlege or approbation of Lee, (the defendant,) that Lee is not responsible therefor, but that Stephens (the overseer,) himself would be the responsible party." Under this instruction, if given, the jury would be told, in substance, that Lee would escape responsibility in every case of unlawful injury, to the slave hired by him, inflicted by his overseer, unless it could be proven that Lee expressly directed or authorized that injury

to be done; for in the absence of such proof it could not be presumed that Lee intended, when he employed the overseer, that he should inflict unlawful and inhuman punishment upon the slaves put under his charge; and under such instruction Lee could not be held responsible for injuries of this character, done by his overseer, although the overseer may have been an improper person to have been employed in that character, and unfit or unworthy to have had given in charge to him the slaves upon Lee's plantation, and although the unwarrantable injury was inflicted upon the slave by such overseer, when engaged in the business pertaining and incident to the nature of his office and employment as overseer of defendant. Such is not the law applicable to this case, nor does the authority cited sustain the principle as manifested in the instruction. In the case cited the injury done to the slave was, as appears from the pleadings as reported, an unlawful trespass committed by one who was not the defendants overseer at all, but, if he was, it is assumed in that case that the pleadings disclosed the fact that the injury done was a willful and unauthorized trespass committed by the overseer when *not* engaged in the usual and proper course of duty (or business) pertaining to his employment.

In the case in question the proof did not authorize the application of the rule as approved in the opinion reported in 5th Munford, and the second instruction was properly refused, but because the court erred in giving the first and third instructions, at the instance of the defendants attorney, the judgment is reversed, and cause remanded for a new trial and further proceedings in conformity with this opinion.

B. & J. MONROE and Fox for plaintiff; HARLAN for defendant.